■ WILLIAM H. SWAN, Appellant, v DOLPHIN LANE ASSOCIATES, LIMITED, et al., Respondents. — In an action, *inter alia*, to recover legal fees, the plaintiff appeals from a judgment of the Supreme Court, Suffolk County (Geiler, J.), dated April 7, 1981, as amended July 8, 1981, which dismissed his complaint, after a nonjury trial. Judgment, as amended, modified by adding to the first decretal paragraph thereof, after the word "dismissed" the following: "except as to the plaintiff's claim for trustee's fees". As so modified, judgment, as amended, affirmed and matter remitted to the trial court for a determination of that claim. No costs are awarded. This action is by William H. Swan, *inter alia*, to recover the sum of $750,000 allegedly due for legal services rendered to Dolphin Lane Associates, Limited (Dolphin), for the period from "1957, and up to the present time [i.e., Aug. 3, 1977]". Dolphin was formed on February 21, 1957 as a limited partnership association pursuant to the Revised Statutes of New Jersey. It had a life span of 20 years and was set up for the purposes of holding real estate for investment and such other activities as would be necessary to accomplish that purpose. On September 20, 1957, an agreement was executed by the 11 associates in Dolphin establishing a trust commonly known as the Swan-Coons trust. Two of the settlors, plaintiff William Swan, an attorney, and Donald Coons, were named trustees. The trust corpus was comprised of three separate parcels of oceanfront land deeded by Dolphin in trust to the trustees. However, Dolphin did not transfer all its land holdings to the trust. The trust was created to provide flexibility in the management of the properties and to facilitate communication among the associates. Over the years plaintiff and other associates purchased the interest of those members of Dolphin who left the association. Through this means, plaintiff's ownership interest increased from 16.67% to about 50% in the first part of the 1960's until by 1968 it was 64.45%. In addition to his interest in Dolphin, the plaintiff had substantial individual ownership interest in lands formerly owned by Dolphin. Moreover, plaintiff owned or had a beneficial interest in lands in proximity to those owned by or held in trust for Dolphin. It is the plaintiff's contention that through the years he performed a variety of services for the benefit of Dolphin. He testified that he spent a total of 12,500 hours on work for Dolphin between 1962 and 1977. He claimed that between 1966 and 1969 he spent 50 to 65% of his time on Dolphin activities. He testified further that he spent close to 95% of his working hours each year between 1969 and 1977 on Dolphin matters. Notwithstanding this vast input of time, plaintiff acknowledged, on the stand, that he had never received specific authorization from the associates to perform services for Dolphin for which he would be paid. On this appeal the plaintiff contends (1) that the trial court erred "in treating plaintiff as a volunteer and denying him compensation for services rendered as an attorney for Dolphin Lane Associates, Ltd. over a thirteen year period"; (2) that plaintiff is "entitled to compensation for services rendered on a theory of Quantum Meruit"; (3) that plaintiff is "entitled to reimbursement for disbursements and out-of-pocket expenses incurred on behalf of Dolphin and defendants"; and (4) that plaintiff should be "awarded * * * statutory commissions and a legal fee

for services rendered as trustee and attorney for that Trust [Swan-Coons] over a twenty year period". After "reading over 1,100 pages of testimony taken at the trial of this action", Trial Term determined that plaintiff was not entitled to any attorney's fee for the claimed services. Trial Term noted that "Swan's increased expenditure of time on Dolphin matters seemed to be in direct relation to his increased ownership of Dolphin shares"; that "[t]he relationship between Swan and Dolphin and the Associates was that of a fiduciary"; that "[t]he rights and obligations which came into existence because of the fiduciary relationship is one that cannot be easily disregarded"; that "[t]his obligation of rigid fair dealing required of a partner is even more pronounced when that partner is the manager of the enterprise and holds a majority interest in the venture (*Styles* v. *Shaver,* 151 A.D. 903, 136 N.Y.S. 347)"; and that "[t]he fact, that the plaintiff spent more time on Dolphin matters and was most 'instrumental' in having the Court of Appeals change its position in the now celebrated Dolphin Lanes case, is in and of itself, no reason to compensate plaintiff for his legal services where there was no express agreement by the other partners (*Rose Trust* v. *Rosen,* 53 A.D.2d 342, 386 N.Y.S.2d 491, affd. 43 N.Y.2d 693, 401 N.Y.S.2d 66)." The court went on to find that there was no express agreement between the parties with respect to the legal services for which claim is made in this action. The court stated, in part: "Who could have stopped Swan from rendering the services that he did? Bartlett testified that Swan was notified in writing by him that, he, Swan, was not to perform any services on his behalf and that he should not expect any payment from him * * * Swan, notwithstanding this admonition and the many others that followed, testified that he worked essentially twenty-four hours a day, seven days a week even after March 1972 despite the fact that there was never any express authorization whereby he could expect any compensation from the defendants. Perhaps the only way the defendants could have stopped Swan short of murder was to shackle him in irons or imprisonment." Trial Term then concluded with these words: "This Court, taking the following items into consideration, has no other alternative but to deny plaintiff's request for payment of his legal services: 1. The plaintiff's divided interest as a result of his majority ownership of Dolphin and the ownership of other lands in the immediate area. 2. The fiduciary relationship of the plaintiff with his partners. 3. The rule that one partner cannot recover for services rendered by him to the partnership in the absence of an express agreement." We affirm Trial Term's findings to the effect that plaintiff was not entitled to recover for the legal services rendered by him to the partnership in the absence of an express agreement and that there was no such agreement with respect to the claim presented herein. It is true that over the years plaintiff had received substantial legal fees for sundry services. Nevertheless, such payments were made for specific services performed, such as sales of property, which defendants acknowledged were due him and which were paid. However that may be, there was no express agreement to pay him for the extensive services over a long period of time for which he sues in this action. While plaintiff may have hoped or anticipated that he would be paid for them, the record reveals that his partners never agreed thereto. Plaintiff's reliance upon excerpts from several letters to establish his right to a fee is misplaced. In the one letter where defendant Bartlett speaks of plaintiff being entitled to a reasonable legal fee, he is discussing sales of properties in the Swan-Coon trust. Likewise, in two other letters, where there is mention of a $1,500 legal fee to be paid to plaintiff, the discussion centers around the sale of a particular piece of property. The final letter relied upon by plaintiff, where Bartlett states that Swan is entitled "to a fee for your services in relationship to Dolphin Lane", is, at best, ambiguous in nature. It most certainly does not establish an express agree-

ment to pay plaintiff for the wide-ranging services he performed which benefited him personally as well as defendants or that any amount owed to him for authorized services has not been paid. In a word, the foregoing documents do not overcome the fact that plaintiff knew that he had no express agreement to be compensated for the services claimed in this lawsuit, and that he continued performing services in the face of warnings to the effect that neither Bartlett nor any of the other partners was willing to be billed for services rendered. Inasmuch as Trial Term's finding that plaintiff is not entitled to payment for legal services performed is supported by the weight of the evidence, it follows that plaintiff is not entitled to disbursements which he expended in connection therewith without defendants' authorization. At trial, the parties amended their pleadings to request the dissolution of the trust. In addition, the plaintiff requested trustee's fees and the defendants set forth objections to those fees. Be that as it may, Trial Term made no determination as to the dissolution of the trust and plaintiff's alleged right to trustee's fees. On oral argument of the appeal, this court was informed that the trust has now been dissolved but that the matter of the trustee's fees is still open. Accordingly, the matter is remitted to the trial court to determine whether plaintiff is entitled to trustee's fees and, if so, the amount thereof. Mangano, J. P., Gulotta, Bracken and Niehoff, JJ., concur.